Binns v. Slingerland.

HENRY BINNS et ux.

v.

DAVID H. SLINGERLAND.

1. A plaintiff at whose instance a court held that a defence presented by the defendant, on an agreed statement of fact, was not available at law, cannot set up, in defence to a bill filed by the defendant to obtain the benefit of the defence in equity, that the agreed statement of facts submitted to the law court was incorrect, a fact being omitted which would have rendered the defence good at law.

2. The provision of the supplemental Mechanics' Lien law (*P. L. of 1895 p. 313 § 5*) that payments made by an owner on a building contract in advance of the terms of the contract shall be no defence to the claim of a subcontractor who serves a "stop notice," under the statute, does not abridge the right of the contractor to make an equitable assignment to a sub-contractor of money to become due under his contract by giving him an order on the owner; and, the owner being bound to recognize such equitable assignment, the payment of the order in advance of the terms of the contract is immaterial to another sub-contractor serving a notice, and cannot avail him to hold the owner to a liability beyond his contract.

Heard on bill, answer and replication.

The object of the bill in this cause is to obtain the benefit of an equitable defence to a judgment at law. The facts which furnish the equitable defence were set up in defence to the action at law, without success. It was tried by a judge without a jury, and his reasons, given informally, show that it was not considered upon its general merits, but simply in the light of whether or not it furnished a defence at law.

The circumstances are as follows: The complainants were the owners of a lot of land and entered into a written contract (duly filed) with one Scott for the erection of a building thereon. Payments were agreed to be made in installments, the last payment—$1,400—being due and payable when the building should be completed. On the 12th of September, 1895, and before the building was completed, Scott became indebted to the defendant,

Slingerland, in the sum of $450, for work done and materials furnished for the building, which, being demanded and payment refused, Slingerland served upon the complainants a stop notice under the third section of the Mechanics' Lien law. Previous to the service of that notice, however, Scott had given to divers persons, to whom he was indebted for work done and materials furnished in the building, written orders on the complainants for a considerable sum of money, payable out of the last payment. Those orders were not formally accepted by complainants. Before the building was completed and the last payment due, but when it was so nearly completed as to warrant the complainants therein, they, being advised that those orders operated as equitable assignments, *pro tanto,* of the amount due from the complainants to Scott, paid them.

The question is whether such payment is an equitable discharge, *pro tanto,* as against the right of the defendant, Slingerland, under his stop notice, the last payment being insufficient to pay all the claims.

The facts just stated were presented to the judge in the law court in an agreed state of the case, and he held that, in the absence of an acceptance of those orders by the complainants here, who were the defendants in the action at law, they were under no legal obligation to pay the same at the time that the Slingerland stop notice was served upon them, and that the right of the parties at law thereby became fixed, and that complainants' subsequent recognition of the equitable rights of the holders of the orders by paying the same could not be set up as a defence at law, and rendered judgment in favor of Slingerland and against the complainants.

Complainants' bill sets out in full the facts agreed upon in the action at law, and they are admitted by the answer. But the answer further sets up that the state of the case so agreed upon was not complete, and that in point of fact the defendants at law and complainants herein had formally accepted the several orders, and that thereby they had a complete defence at law, and not having set it up at law they cannot now be heard in this court.

The points argued were:

*First.* Did the orders so given by Scott upon the complainants work an equitable assignment, *pro tanto,* of the several sums assigned?

*Second.* Can the defendant herein have the benefit of the allegation in his answer that the orders were, in fact, accepted by the complainants and thereby rendered obligations at law?

*Third.* And the point principally relied upon by the defendants herein, that those payments were "advance payments," and forbidden by the fifth section of the supplement to the Mechanics' Lien law, approved March 14th, 1895. *P. L. of 1895 p. 313; Gen. Stat. p. 2074 § 41.*

*Mr. George P. Rust* and *Mr. John B. Humphreys,* for the complainants.

*Mr. William W. Watson,* for the defendant.

Pitney, V. C.

It was not seriously contended but that the drawing of the orders worked an equitable assignment of so much of the last payment as they covered, and that they thereby gained, in equity, a priority over the notice served by the defendant herein. *Superintendent, Trustees Public Schools · v. Heath, 2 McCart. 22·; Lanigan v. Bradley & Currier Co., 5 Dick. Ch. Rep. 201.* And it is equally clear that the rights of such equitable assignees could have been enforced in this court. And if the complainants herein had, as soon as the building was completed and the payment of $1,400 became due from them, deposited the same in this court and filed a bill of interpleader against the several parties, the holders of those orders would have prevailed over the defendant, Slingerland, claiming under his stop notice of September 12th. They were first in time, and therefore prior in right. The complainants, however, instead of putting the parties to the expense of an interpleader, saw fit to pay them their money directly, and strictly in accordance with the equitable rights and liabilities arising out of the facts. When, however,

that yielding to the superior rights of the holders of those orders was presented by them as a defence in the action at law, the learned judge held that the defence was not there available. The complainants herein were thereupon entitled to accept that ruling as the law of that case, and were not under obligation to test its correctness by taking the opinion of a higher court. It does not lie in the mouth of the defendant herein to say that the decision of the court of law was erroneous when it was made in his favor and upon his demand. In this respect the case is clearly and entirely within the rule adopted and acted upon in the case of *Oehme's Administrators* v. *Ruckelshaus, 3 Dick. Ch. Rep. 436;* affirmed on appeal, *4 Dick. Ch. Rep. 340.*

With regard to the second point taken, namely, that in point of fact the payment of these orders was a legal defence because they, in point of fact, were accepted and turned into legal obligations prior to the service of the notice by the defendant, of September 12th, and therefore available at law, two answers are made—first, that the allegation in that behalf in the answer is new matter which is put in issue by the replication, and as the defendant did not choose to avail himself of his privilege of proving it, he cannot have the benefit of it at the hearing. This point, I think, is well taken.

A second point taken was this: That the defence set up at the hearing of the case at law was purely an equitable defence, and failed for that reason, and its equitable character is not eliminated by an allegation that there was also a legal defence. Or, putting it another way, it does not lie in the mouth of the defendant herein to take that point at this time, no matter what the facts may be, since he agreed to a state of facts which omitted in his favor at law the essential element of an acceptance of the orders. For both these reasons, I think, that point cannot prevail.

The remaining point is as to the effect of the statute above referred to. If that section of the statute has any application to this case, it must be by way of taking away the right of the contractor to make any preferences among his creditors by giving orders in favor of any of them. If the contractor has the

Binns *v.* Slingerland.

power to give a written order and thereby make an equitable assignment of a part or the whole of any of his payments, then the owner of the building who owes those payments is bound to recognize those assignments and yield to them, and his payment of them, no matter when made, cannot be considered in any sense as a voluntary "advance payment," but wholly involuntary. In such case he pays because he cannot ultimately escape payment. The circumstance that he pays sooner than he would be obliged to pay is immaterial, because it does not affect the result; for if he should defer payment until, by the strict terms of the contract, the money was actually due to the contractor, he would still be obliged to pay the holders of the orders, and nobody can be injured by the payment in advance. In short, such payments lack the essential elements of advance payments from the owner to the contractor; and, therefore, the simple and only question is, can the enactment in question be construed as forbidding preliminary disposition by the contractor in favor of persons who have furnished materials or done work for the building?

The language is broad :

"That if the owner or owners of any building or other property which [by law] is made the subject of liens, for or toward the construction, altering, repair or improvement of which labor or services have been performed or materials furnished by contract, duly filed, shall, for the purpose of avoiding the provisions of the act to which this is a supplement, *or in advance of the terms of such contract,* pay any money or other valuable thing on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of the act of which this is a supplement, such owner or owners shall be liable in the same manner as if no such payment had been made."

It will be observed that the act does not state to whom the forbidden payment shall be made, but it evidently means a payment to the contractor. Granting that to be the proper construction, still it is argued that a payment to the assignee of the contractor is, in effect, a payment to him. In a sense that is correct. But a determination that it is correct does not meet the question whether or not the contractor is forbidden to exercise his common-law right of preferring creditors and designating

which of the persons furnishing him with materials he wishes to be paid in case there is not enough to pay all. If he has that right and exercises it, then the owner has no option, but must observe it, and a payment made in pursuance of such an assignment is, as already observed, in no proper sense a voluntary payment. It is hardly necessary to observe that the act is not aimed against involuntary payments.

The question is not without its difficulties, but the conclusion to which I arrive is this: That the practice of contractors making such preferences by giving orders to materialmen has become so thoroughly familiar to everybody, and has been so frequently before the courts, and their right so to do so thoroughly established, that I must conclude that if the legislature had intended to restrict this right on the part of contractors, they would have done so by express language. Besides, it is pretty plain, reading the whole section together, that the object of the legislature was to prevent such action on the part of the owner as would enable the contractor to divert payments from their proper destination, namely, the hands of the persons who furnished materials and labor as sub-contractors, under, or workmen for, the principal contractor. And I cannot see any indication that it was in the mind of the legislature to prevent the contractor parceling out as he saw fit, and as he has done in this case, among his sub-contractors, the moneys which were falling due under the contract. The harshness of placing restrictions upon these advance payments was pointed out in the case of *Mutual Life Insurance Co.* v. *Walling, 6 Dick. Ch. Rep. 99,* with the result that the section of the statute there under consideration (*Gen. Stat. p. 2071* ¶ *32*), was modified by amendment, found in the sixth section of the act of March 14th, 1895, being paragraph 42 of the Mechanics' Lien law. *Gen. Stat. p. 2075.* The construction contended for by defendant herein seems to me so harsh that it ought not to be adopted unless the legislative intent is very clear.

For these reasons I decline to adopt it, and conclude that the payments here in question were not forbidden by the section forbidding advance payments; and will advise a decree in favor of the complainants in accordance with the foregoing views.